

# Notice of Service of Process

null / ALL
**Transmittal Number: 24826007**
**Date Processed: 04/26/2022**

Primary Contact:   Bruce Buttaro; Hm Office Lgl SOP Paralegal
Liberty Mutual Insurance Company
175 Berkeley St
Boston, MA 02116-5066

| | |
|---|---|
| Entity: | Liberty Mutual Insurance Company<br>Entity ID Number  1765547 |
| Entity Served: | Liberty Mutual Insurance Company |
| Title of Action: | Famous Distribution, Inc. vs. Liberty Mutual Insurance Company |
| Matter Name/ID: | Famous Distribution, Inc. vs. Liberty Mutual Insurance Company (12230775) |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court/Agency: | Cuyahoga County Court of Common Pleas, OH |
| Case/Reference No: | CV 22 962182 |
| Jurisdiction Served: | Massachusetts |
| Date Served on CSC: | 04/26/2022 |
| Answer or Appearance Due: | 28 Days |
| Originally Served On: | Liberty Mutual on 04/26/2022 |
| How Served: | Client Direct |
| Sender Information: | Sonkin & Koberna, LLC<br>216-514-8300 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882  |  sop@cscglobal.com

NAILAH K. BYRD
1200 Ontario
Cleveland, OH 44113

Case# CV22982182

RETURN RECEIPT REQUESTED ELECTRONICALLY



9314 8001 1300 3546 5775 19

LIBERTY MUTUAL INSURANCE COMPANY
175 BERKELY STREET
BOSTON MA 02116

**SUMMONS IN A CIVIL ACTION**     **COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER**
CLEVELAND, OHIO 44113

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV22962182 | D1 CM | 47318890 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

FAMOUS DISTRIBUTION, INC.     **PLAINTIFF**
VS
LIBERTY MUTUAL INSURANCE COMPANY, ET     **DEFENDANT**
AL.

**SUMMONS**

LIBERTY MUTUAL INSURANCE COMPANY
175 BERKELY STREET
BOSTON MA 02116

You have been named defendant in a sums
complaint (copy attached hereto) filed in Cuyahoga
County Court of Common Pleas, Cuyahoga County
Justice Center, Cleveland, Ohio 44113, by the
plaintiff named herein.

You are hereby summoned and required to
answer the complaint within 28 days after service
of this summons upon you, exclusive of the day of
service.

Said answer is required to be served on:



**Plaintiff's Attorney**

SEAN KORAN
3401 ENTERPRISE PARKWAY

SUITE 400
BEACHWOOD, OH 44122-0000

Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

Case has been assigned to Judge:

DAVID T MATIA
Do not contact judge. Judge's name is given for
attorney's reference only.



**NAILAH K. BYRD**
Clerk of the Court of Common Pleas



| DATE SENT |
|---|
| Apr 19, 2022 |

By_____
Deputy

COMPLAINT FILED    04/18/2022

CMSN130



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**April 18, 2022 16:23**

By: SEAN KORAN 0085539

Confirmation Nbr. 2528006

FAMOUS DISTRIBUTION, INC.                              CV 22 962182

vs.

LIBERTY MUTUAL INSURANCE COMPANY, ET AL.      Judge:  DAVID T. MATIA

Pages Filed:  17

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| FAMOUS DISTRIBUTION, INC.<br>2620 Ridgewood Road<br>Akron, Ohio 44313 | CASE NO.<br><br>JUDGE |
| Plaintiff, | **COMPLAINT** |
| v. | |
| LIBERTY MUTUAL INSURANCE<br>COMPANY<br>175 Berkely Street<br>Boston, Massachusetts 02116 | |
| <u>Please also serve:</u><br>CORPORATION SERVICE<br>COMPANY<br>84 State Street<br>Boston, Massachusetts 02109 | **(JURY DEMAND ENDORSED HEREON)** |
| and | |
| LIBERTY MUTUAL GROUP, INC.<br>175 Berkely Street<br>Boston, Massachusetts 02116 | |
| <u>Please also serve:</u><br>CORPORATION SERVICE<br>COMPANY<br>50 West Broad Street, Suite 1330<br>Columbus, Ohio 43215 | |
| Defendants. | |

Now comes Plaintiff Famous Distribution, Inc. ("Famous Distribution"), by and through

undersigned counsel, and, pursuant to Civ.R. 3(A), hereby states its Complaint against Defendants

Liberty Mutual Insurance Company and Liberty Mutual Group, Inc. (collectively, "Liberty Mutual") as follows:

## INTRODUCTION

1.      This is an insurance coverage and bad faith action brought to enforce Famous Distribution's rights under insurance policies issued to it by Liberty Mutual.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Famous Distribution is an Ohio corporation which maintains a corporate office and multiple branches in Cuyahoga County, Ohio.

3.      Defendant Liberty Mutual Insurance Company is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

4.      Defendant Liberty Mutual Group, Inc. is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

5.      Defendant Liberty Mutual Group, Inc. is registered to conduct business in Ohio.

6.      This Court has personal jurisdiction over Liberty Mutual pursuant to R.C. 2307.382, as (a) Liberty Mutual Group, Inc. is licensed by the Ohio Secretary of State to transact business in Ohio; (b) Liberty Mutual specifically transacts business in Ohio by entering into contractual relationships with Ohio businesses and residents; and (c) Liberty Mutual has purposely availed itself of the privilege of conducting business in Ohio.

7.      Venue is proper in this Court pursuant to Civ.R. 3(C), as: (a) Liberty Mutual conducted activity in Cuyahoga County which gave rise to Famous Distribution's claims for relief; (b) Cuyahoga County is where all or part of Famous Distribution's claims for relief arose; and (c) Famous Distribution maintains a corporate office and other physical locations in Cuyahoga County.

## FACTUAL BACKGROUND

**A.      The Policies**

      **i.**     **The Liberty Mutual Comprehensive General Liability and Commercial General Liability Policies**

     **8.**     For successive periods from June 30, 1985 to June 30, 1993, Liberty Mutual issued Comprehensive General Liability or Commercial General Liability policies (the "CGL Policies") to "Famous Supply Co." Full copies of the CGL Policies are not attached as they are too lengthy to append as exhibits. Liberty Mutual has copies of the CGL Policies in its possession.

     **9.**     During this time period, "Famous Supply Co." was, and still is, a trade name of Famous Distribution.

     **10.**    Each of the CGL Policies contains provisions such as, substantially similar to, or functionally equivalent to those of the CGL Policy issued from June 30, 1987 to June 30, 1988 (the "1987/1988 CGL Policy").

     **11.**    The 1987/1988 CGL Policy provides, among other things, that:

> The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of
>
>       **Coverage A. bodily injury** or
>
>       **Coverage B. property damage**
>
> to which this policy applies, caused by **an occurrence**, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment or judgments or settlements.

3

12. The 1987/1988 CGL Policy provides, among other things, that:

**"bodily injury"** means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

13. The 1987/1988 CGL Policy provides, among other things, that:

**"occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

**ii.     The Liberty Mutual Umbrella Excess Liability Policies**

14. For successive periods from June 30, 1985 to June 30, 1994, Liberty Mutual issued Umbrella Excess Liability policies (the "UEL Policies") to "Famous Supply Co." Full copies of the UEL Policies are not attached as they are too lengthy to append as exhibits. Liberty Mutual has copies of the UEL Policies in its possession.

15. During this time period, "Famous Supply Co." was, and still is, a trade name of Famous Distribution.

16. Each of the UEL Policies contains provisions such as, substantially similar to, or functionally equivalent to those of the UEL Policy issued from June 30, 1986 to June 30, 1987 (the "1986/1987 UEL Policy").

17. The 1986/1987 UEL Policy provides, among other things, that:

The company will pay on behalf of the **insured** all sums in excess of the **retained limit** which the **insured** shall become legally obligated to pay, or with the consent of the company, agrees to pay, as damages, direct or consequential, because of

(a)     **personal injury,**

(b)     **property damage,** or

(c)     **advertising injury or damage**

with respect to which this policy applies and caused by an **occurrence**.

18. The 1986/1987 UEL Policy provides, among other things, that:

With respect to **personal injury, property damage,** or **advertising injury or damage** covered under this policy (or which would be covered but for the **insured's** retention as stated in the declarations), but not covered under any **underlying policy** or any other insurance, the company will

(1) defend any suit against the **insured** seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient

\* \* \*

and the amounts so incurred, except settlement of claims and suits, are not subject to the **insured's** retention as stated in the declarations and are payable by the company in addition to the applicable limit of liability of this policy.

19. The 1986/1987 UEL Policy provides, among other things, that:

"**bodily injury**" includes sickness or disease and death resulting at any time therefrom.

20. The 1986/1987 UEL Policy provides, among other things, that:

"occurrence" means injuries exposure to conditions, which results in **personal injury, property damage** or **advertising injury or damage** neither expected nor intended from the standpoint of the **insured**.

21. The 1986/1987 UEL Policy provides, among other things, that:

"**personal injury**" means personal injury or **bodily injury** which occurs during the policy period sustained by a natural person, but excluding any such injury included within the definition of **advertising injury or damage**.

**B.    The Underlying Lawsuit**

22.    On or about August 6, 2021, Donald McIlvain, Sr. ("Mr. McIlvain") and his wife, Carol McIlvain (collectively, the "McIlvains"), filed a lawsuit the Circuit Court of Kanawha County, West Virginia against Famous Distribution and various other defendants, which was assigned Case No. 21-C-666 (the "*McIlvain* Lawsuit").

23.    In the *McIlvain* Lawsuit, the McIlvains allege, among other things, that Mr. McIlvain was exposed to asbestos from 1969 to 1998 while working as a maintenance foreman, plumber, pipefitter, and HVAC maintenance mechanic in Ohio and West Virginia, and throughout his lifetime while performing automobile work.

24.    In the *McIlvain* Lawsuit, the McIlvains further allege that, as a result of his exposure to asbestos, Mr. McIlvain developed lung cancer, which was diagnosed on or about August 20, 2019.

25.    In the *McIlvain* Lawsuit, the McIlvains also allege that defendants, including Famous Distribution, "are being sued as Asbestos Defendant Product Manufacturers/Suppliers/Installers/Distributors upon the theories of negligence, contaminated buildings, breach of expressed/implied warranty, strict liability, intentional tort, conspiracy, misrepresentations by specific defendants, and post-sale duty to warn. Certain defendants are also being sued as premises owners and as a plaintiff's employers for deliberate intent/intentional tort."

**C.    Famous Distribution's Tender of the *McIlvain* Lawsuit to Liberty Mutual and Liberty Mutual's Initial Denial.**

26.    On August 27, 2021, just 21 days after the *McIlvain* Lawsuit was filed, Famous Distribution, through its attorneys, tendered the *McIlvain* Lawsuit to Liberty Mutual for defense and indemnity via Liberty Mutual's third party claims administrator, Resolute Management, Inc. ("Resolute").

27.     Resolute responded to Famous Distribution's tender by a letter dated September 15, 2021, wherein Resolute indicated "Liberty Mutual has no duty, and therefore declines, to participate in the defense of Famous Distribution in this lawsuit or to indemnify it for any settlement or judgment incurred by it as a result" (the "September 15, 2021 Denial Letter").

28.     In its September 15, 2021 Denial Letter, Resolute claimed Liberty Mutual's denial of coverage and refusal to defend or indemnify Famous Distribution against the *McIlvain* Lawsuit was based on two things: (a) asbestos exclusions contained in the CGL Policies issued from June 30, 1988 through June 30, 1993 and contained in the UEL Policies issued from June 30, 1987 to June 30, 1994; and (b) the fact that "Famous Supply Co.," instead of Famous Distribution, was listed as the named insured in all of the CGL Policies and all of the UEL Policies except the UEL Policy issued from June 30, 1993 to June 30, 1994 (which was subject to an asbestos exclusion).

**D.      Liberty Mutual's Final Denial of Coverage for the *McIlvain* Lawsuit and Unreasonable Delay in Responding to Famous Distribution's Request for Reconsideration.**

29.     On September 22, 2021, counsel for Famous Distribution responded to the September 15, 2021 Denial Letter.

30.     In this September 22, 2021 letter, Famous Distribution pointed out that, although Resolute claimed the CGL Policies issued from June 30, 1988 through June 30, 1993, and the UEL Policies issued from June 30, 1987 through June 30, 1994 contain asbestos exclusions, even assuming those assertions were accurate, that would still mean there is coverage under the CGL Policies issued from June 30, 1985 through June 30, 1988, and the UEL Policies issued from June 30, 1985 through June 30, 1987.

31.     In its September 22, 2021 letter, Famous Distribution further explained that it was clearly intended that the CGL Policies and UEL Policies provide coverage for Famous Distribution.

32.     This is because "Famous Supply Co." was an unregistered trade name — not a separate legal entity of any type, nor even a registered trade name — used by Famous Distribution during the relevant 1985 to 1994 time period (as well as outside that time period).

33.     "Famous Supply Co." is not, nor has it ever been, a registered entity in the State of Ohio.

34.     Likewise, "Famous Supply Co.," is not, nor has it ever been, a registered trade name in the State of Ohio.

35.     In 2012, Famous Distribution registered "Famous Supply" as trade name in Ohio.

36.     "Famous Supply Co." also is not, nor has it ever been, a registered entity in the State of Pennsylvania.

37.     However, in 1925, "Famous Supply Company" was registered in Pennsylvania as a fictious entity by an entity unrelated to Famous Distribution.

38.     At some point well prior to the 1985 to 1994 time period relevant to this litigation, an entity owned by Famous Distribution's founder, Hyman Blaushild (either individually or through another entity he owned), acquired the entity that had registered the "Famous Supply Company" trade name in Pennsylvania and began using the shortened "Famous Supply Co." trade name for his businesses.

39.     When Famous Distribution was incorporated in 1970, it began using and operating under the "Famous Supply Company" and/or "Famous Supply Co." trade names.

8

40.     For whatever reason, the CGL Policies and the UEL Policies were issued in the name of "Famous Supply Co." — again, an entity that does not exist in the State of Ohio and is a fictious entity in the State of Pennsylvania — instead of Famous Distribution.

41.     However, the clear intent of the parties in entering into the CGL Policies and UEL Policies was to provide coverage for Famous Distribution.

42.     Otherwise, Famous Distribution would have been paying Liberty Mutual tens of thousands of dollars in annual premiums to provide illusory coverage for an entity that did not exist.

43.     Famous Distribution concluded its September 22, 2021 letter to Resolute by requesting that Resolute and Liberty Mutual reconsider their denial of coverage for the *McIlvain* Lawsuit.

44.     Resolute responded to Famous Distribution's September 22, 2021 letter by a letter dated October 13, 2021, wherein Resolute indicated it was "reviewing [Famous Distribution's] letter and its related files and will apprise you further once more information is known."

45.     When nearly a month passed without any further response from Resolute and Liberty Mutual, Famous Distribution sent a follow-up letter to Resolute on November 10, 2021 wherein in explained:

> Since [Resolute's October 13, 2021 letter], we have received no additional communication regarding this matter. As the [*McIlvain*] Lawsuit continues to progress, it is critical that Famous has a timely understanding of Liberty Mutual's ultimate position regarding coverage. With that in mind, we request that you please provide us with Liberty Mutual's updated coverage position as soon as possible. Otherwise, Famous will be forced to take necessary measures to protect its interests and enforce its rights under the relevant insurance policies including, without limitation, initiating litigation against Liberty Mutual.

46.     Resolute finally provided a substantive response to Famous Distribution's September 22, 2021 request for reconsideration by a letter dated December 9, 2021 — over ten weeks after Famous Distribution sent its request for reconsideration — affirming its denial of coverage for Famous Distribution and refusal to defend or indemnify Famous Distribution in the *McIlvain* Lawsuit.

47.     In its December 9, 2021 letter, Resolute explained that Liberty Mutual was unable to locate any underwriting materials for the CGL Policies or UEL Policies and, therefore, "is unable to confirm whether Famous Distribution was an intended insured under the Liberty Mutual policies" and that "[a]s a result, Liberty mutual has no duty, and therefore declines, to participate in the defense of Famous distribution in this lawsuit or to indemnify it for any settlement or judgment incurred by it as a result."

48.     In essence, Liberty Mutual's position is that because it destroyed its underwriting files for the CGL Policies and UEL Policies, it will hold fast to its bad faith interpretation that the CGL Policies and UEL Policies for which Famous Distribution faithfully paid expensive premiums to Liberty Mutual every year, actually only provides coverage for "Famous Supply Co.", an entity that has never existed, despite the fact "Famous Supply Co." is in actuality the trade name used by Famous Distribution.

## COUNT I
### (Breach of Contract — CGL Policies)

49.     Famous Distribution incorporates by reference the foregoing allegations in this Complaint as if fully restated herein.

50.     Liberty Mutual issued the CGL Policies to Famous Distribution under its trade name — "Famous Supply Co."

51.　The CGL Policies are valid and binding contracts, including offer, acceptance and consideration.

52.　The CGL Policies provide insurance coverage to Famous Distribution, among other benefits.

53.　Famous Distribution has performed all conditions precedent, if any, of the CGL Policies and/or is excused from the same.

54.　Liberty Mutual has failed and refused to provide coverage and/or other benefits to Famous Distribution under the CGL Policies including, but not limited to, providing Famous Distribution with a defense in the *McIlvain* lawsuit, constituting a breach of contract.

55.　As a direct and proximate result of Liberty Mutual's breach of contract, Famous Distribution has suffered damages in an amount to be proved at trial, but in excess of $25,000.

## COUNT II
### (Breach of Contract — UEL Policies)

56.　Famous Distribution incorporates by reference the foregoing allegations in this Complaint as if fully restated herein.

57.　Liberty Mutual issued the UEL Policies to Famous Distribution under its trade name — "Famous Supply Co."

58.　The UEL Policies are valid and binding contracts, including offer, acceptance and consideration.

59.　The UEL Policies provide insurance coverage to Famous Distribution, among other benefits.

60.　Famous Distribution has performed all conditions precedent, if any, of the UEL Policies and/or is excused from the same.

61.     Liberty Mutual has failed and refused to provide coverage and/or other benefits to Famous Distribution under the UEL Policies including, but not limited to, providing Famous Distribution with a defense in the *McIlvain* lawsuit, constituting a breach of contract.

62.     As a direct and proximate result of Liberty Mutual's breach of contract, Famous Distribution has suffered damages in an amount to be proved at trial, but in excess of $25,000.

## COUNT III
### (Declaratory Judgment — CGL Policies)

63.     Famous Distribution incorporates by reference the foregoing allegations in this Complaint as if fully restated herein.

64.     There exists a real and justiciable controversy which is ripe for determination regarding the parties' rights and obligations under the CGL Policies including, without limitation, a dispute as to whether (a) Famous Distribution is entitled to coverage and/or other benefits under the CGL Policies; (b) Liberty Mutual has a duty to defend Famous Distribution in the *McIlvain* Lawsuit under the CGL Policies; and (c) Liberty Mutual has a duty to indemnify Famous Distribution with respect the *McIlvain* Lawsuit under the CGL Policies.

65.     Famous Distribution has no adequate remedy at law.

66.     Famous Distribution is entitled to a determination of the parties' rights and obligations under the CGL Policies, including, without limitation, a declaration that (a) Famous Distribution is entitled to coverage and/or other benefits under the CGL Policies; (b) Liberty Mutual has a duty to defend Famous Distribution in the *McIlvain* Lawsuit under the CGL Policies; and (c) Liberty Mutual as a duty to indemnify Famous Distribution with respect to the *McIlvain* Lawsuit under the CGL Policies.

## COUNT IV
### (Declaratory Judgment — UEL Policies)

67.      Famous Distribution incorporates by reference the foregoing allegations in this Complaint as if fully restated herein.

68.      There exists a real and justiciable controversy which is ripe for determination regarding the parties' rights and obligations under the UEL Policies including, without limitation, a dispute as to whether (a) Famous Distribution is entitled to coverage and/or other benefits under the UEL Policies; (b) Liberty Mutual has a duty to defend Famous Distribution in the *McIlvain* Lawsuit under the UEL Policies; and (c) Liberty Mutual has a duty to indemnify Famous Distribution with respect the *McIlvain* Lawsuit under the UEL Policies.

69.      Famous Distribution has no adequate remedy at law.

70.      Famous Distribution is entitled to a determination of the parties' rights and obligations under the UEL Policies, including, without limitation, a declaration that (a) Famous Distribution is entitled to coverage and/or other benefits under the UEL Policies; (b) Liberty Mutual has a duty to defend Famous Distribution in the *McIlvain* Lawsuit under the UEL Policies; and (c) Liberty Mutual as a duty to indemnify Famous Distribution with respect to the *McIlvain* Lawsuit under the UEL Policies.

## COUNT V
### (Bad Faith Denial of Coverage — CGL Policies)

71.      Famous Distribution incorporates by reference the foregoing allegations in this Complaint as if fully restated herein.

72.      Liberty Mutual owes Famous Distribution a duty to act in good faith with respect to Famous Distribution's claim for Liberty Mutual to provide Famous Distribution with a defense and indemnity under the CGL Policies with respect to the *McIlvain* Lawsuit.

73.     Liberty Mutual's denial of coverage and refusal to provide Famous Distribution with a defense and indemnity in the *McIlvain* Lawsuit in the face of the clear and unambiguous language of the CGL Policies is in bad faith.

74.     As a direct and proximate result of Liberty Mutual's bad faith denial of coverage and refusal to provide Famous Distribution with a defense and indemnity in the *McIlvain* Lawsuit under the CGL Policies, Famous Distribution has suffered damages in an amount to be proved at trial, but well in excess of $25,000, and is also entitled to an award of punitive damages.

## COUNT VI
### (Bad Faith Denial of Coverage — UEL Policies)

75.     Famous Distribution incorporates by reference the foregoing allegations in this Complaint as if fully restated herein.

76.     Liberty Mutual owes Famous Distribution a duty to act in good faith with respect to Famous Distribution's claim for Liberty Mutual to provide Famous Distribution with a defense and indemnity under the UEL Policies with respect to the *McIlvain* Lawsuit.

77.     Liberty Mutual's denial of coverage and refusal to provide Famous Distribution with a defense and indemnity in the *McIlvain* Lawsuit in the face of the clear and unambiguous language of the UEL Policies is in bad faith.

78.     As a direct and proximate result of Liberty Mutual's bad faith denial of coverage and refusal to provide Famous Distribution with a defense and indemnity in the *McIlvain* Lawsuit under the UEL Policies, Famous Distribution has suffered damages in an amount to be proved at trial, but well in excess of $25,000, and is also entitled to an award of punitive damages.

14

WHEREFORE, Famous Distribution demands judgment against Liberty Mutual, and prays unto the Court for the following relief:

1. As to Count I, judgment in favor of Famous Distribution and against Liberty Mutual in an amount to be proven at trial in excess of $25,000.00;

2. As to Count II, judgment in favor of Famous Distribution and against Liberty Mutual in an amount to be proven at trial in excess of $25,000.00;

3. As to Count III, an order declaring the rights and obligations of the parties under the CGL Policies, including, without limitation, an order declaring that (a) Famous Distribution is entitled to coverage and/or other benefits under the CGL Policies; (b) Liberty Mutual has a duty to defend Famous Distribution in the *McIlvain* Lawsuit under the CGL Policies; and (c) Liberty Mutual as a duty to indemnify Famous Distribution with respect to the *McIlvain* Lawsuit under the CGL Policies;

4. As to Count IV, an order declaring the rights and obligations of the parties under the UEL Policies, including, without limitation, an order declaring that (a) Famous Distribution is entitled to coverage and/or other benefits under the UEL Policies; (b) Liberty Mutual has a duty to defend Famous Distribution in the *McIlvain* Lawsuit under the UEL Policies; and (c) Liberty Mutual as a duty to indemnify Famous Distribution with respect to the *McIlvain* Lawsuit under the UEL Policies;

5. As to Count V, for compensatory damages in an amount to be proved at trial in excess of $25,00000, and an award of punitive damages;

6. As to Count VI, for compensatory damages in an amount to be proved at trial in excess of $25,00000, and an award of punitive damages; and

Electronically Filed 04/18/2022 16:23 / / CV 22 962182 / Confirmation Nbr. 2528006 / CLAJB

7.    On all counts, pre- and post-judgment interest, reasonable attorney's fees and costs as permitted by law, costs of collection, and such other and further relief as this Court deems just and proper.

Dated: April 18, 2022                           Respectfully submitted,

                                                */s/ Sean T. Koran*
                                                Mark R. Koberna (0038985)
                                                Sean T. Koran (0085539)
                                                SONKIN & KOBERNA, LLC
                                                3401 Enterprise Parkway, Suite 400
                                                Cleveland, Ohio 44122
                                                Telephone: (216) 514-8300
                                                Facsimile: (216) 514-4467
                                                mkoberna@sklawllc.com
                                                skoran@sklawllc.com

                                                *Counsel for Plaintiff*
                                                *Famous Distribution, Inc.*

## JURY DEMAND

Plaintiff Famous Distribution hereby demands a trial by a jury of the maximum number allowed by law.

/s/ Sean T. Koran
Sean T. Koran (0085539)

*Counsel for Plaintiff*

**Saevang, Lai**

| | |
|---|---|
| **From:** | HOLegalMail <HOLegalMail@LibertyMutual.com> |
| **Sent:** | Tuesday, April 26, 2022 9:40 AM |
| **To:** | LibertySOP |
| **Subject:** | FW: Message from km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 |
| **Attachments:** | Skm554-49-022042611301.pdf |

Please upload to Litigation DP.

Thank you,
Alyssa