**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION, CLEVELAND**

| | | |
|---|---|---|
| FAMOUS DISTRIBUTION, INC., | : | Case No: 1:22-cv-00837-DAR |
| | : | |
| Plaintiff, | : | Judge David A. Ruiz |
| | : | |
| | : | Magistrate Judge Jonathan D. Greenberg |
| | : | |
| v. | : | **LIBERTY MUTUAL INSURANCE** |
| | : | **COMPANY AND LIBERTY MUTUAL** |
| | : | **GROUP ANSWER TO PLAINTIFF'S** |
| | : | **COMPLAINT** |
| | : | |
| LIBERTY MUTUAL INSURANCE | : | |
| COMPANY, et al., | : | |
| | : | |
| Defendants. | : | |

Now come Defendants Liberty Mutual Insurance Company and Liberty Mutual Group (collectively, "Liberty"), by and through counsel, and hereby respond to the allegations of Plaintiff Famous Distribution, Inc.'s ("Plaintiff") Complaint as follows:

## INTRODUCTION

1.    This is an insurance coverage and bad faith action brought to enforce Famous Distribution's rights under insurance policies issued to it by Liberty Mutual.

Answer:    The allegations in this paragraph describe the claims brought by Plaintiff in a written pleading which speaks for itself.  To the extent that an answer is required, Liberty denies the allegation.

## PARTIES, JURISDICTION, AND VENUE

2.    Plaintiff Famous Distribution is an Ohio corporation which maintains a corporate office and multiple branches in Cuyahoga County, Ohio.

Answer:    Liberty is without sufficient information to respond to the allegations in Paragraph 2 of the Complaint and denies the allegations.

1

3.      Defendant Liberty Mutual Insurance Company is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

Answer:        Admitted.


4.      Defendant Liberty Mutual Group, Inc. is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

Answer:        Admitted.


5.      Defendant Liberty Mutual Group, Inc. is registered to conduct business in Ohio.

Answer:        Liberty answers that the term "registered" is vague and ambiguous.  Answering further, Liberty Mutual Group, Inc. is a holding company and Liberty Mutual Insurance Company is an admitted insurer in Ohio.  Both are authorized to do business in Ohio.


6.      This Court has personal jurisdiction over Liberty Mutual pursuant to R.C. 2307.382, as (a) Liberty Mutual Group, Inc. is licensed by the Ohio Secretary of State to transact business in Ohio; (b) Liberty Mutual specifically transacts business in Ohio by entering into contractual relationships with Ohio businesses and residents; and (c) Liberty Mutual has purposely availed itself of the privilege of conducting business in Ohio.

Answer:        Allegations concerning personal jurisdiction assert conclusions of law to which no answer is required, and Liberty denies the allegations on that basis.  Answering further, Liberty Mutual Group, Inc. is a holding company and Liberty Mutual Insurance Company is an admitted insurer in Ohio.  Both are authorized to do business in Ohio.  Liberty Mutual Insurance Company has availed itself of this forum.

7.      Venue is proper in this Court pursuant to Civ.R. 3(C), as: (a) Liberty Mutual conducted activity in Cuyahoga County which gave rise to Famous Distribution's claims for relief; (b) Cuyahoga County is where all or part of Famous Distribution's claims for relief arose; and (c) Famous Distribution maintains a corporate office and other physical locations in Cuyahoga County.

Answer:      Allegations concerning venue assert conclusions of law to which no answer is required, and Liberty denies the allegations on that basis.  Liberty is without sufficient information to answer where Plaintiff maintains its offices and denies the allegations on that basis.

## FACTUAL BACKGROUND

   A.    **The Policies**

        i.    **The Liberty Mutual Comprehensive General Liability and Commercial General Liability Policies**

8.      For successive periods from June 30, 1985 to June 30, 1993, Liberty Mutual issued Comprehensive General Liability or Commercial General Liability policies (the "CGL Policies") to "Famous Supply Co."  Full copies of the CGL Policies are not attached as they are too lengthy to append as exhibits. Liberty Mutual has copies of the CGL Policies in its possession.

Answer:      The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.

9.      During this time period, "Famous Supply Co." was, and still is, a trade name of Famous Distribution.

Answer:      Liberty is without sufficient knowledge or information to admit or deny these allegations and denies them on that basis.

10.     Each of the CGL Policies contains provisions such as, substantially similar to, or functionally equivalent to those of the CGL Policy issued from June 30, 1987 to June 30, 1988 (the "1987/1988 CGL Policy").

<u>Answer</u>:      The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.

11.     The 1987/1988 CGL Policy provides, among other things, that:

The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of

Coverage A. **bodily injury** or

Coverage B. **property damage**

to which this policy applies, caused by an **occurrence,** and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage,** even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment or judgments or settlements.

<u>Answer</u>:      The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.

12.     The 1987/1988 CGL Policy provides, among other things, that:

**"bodily injury"** means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

4

Answer:        The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.


13.    The 1987/1988 CGL Policy provides, among other things, that:

> **"occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

Answer:        The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.


## The Liberty Mutual Umbrella Excess Liability Policies

14.    For successive periods from June 30, 1985 to June 30, 1994, Liberty Mutual issued Umbrella Excess Liability policies (the "UEL Policies") to "Famous Supply Co." Full copies of the UEL Policies are not attached as they are too lengthy to append as exhibits. Liberty Mutual has copies of the UEL Policies in its possession.

Answer:        The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.


15.    During this time period, "Famous Supply Co." was, and still is, a trade name of Famous Distribution.

Answer:        Liberty is without sufficient knowledge or information to admit or deny these allegations and denies them on that basis.

16.     Each of the UEL Policies contains provisions such as, substantially similar to, or functionally equivalent to those of the <u>UFT.</u> Policy issued from June 30, 1986 to June 30, 1987 (the "1986/1987 UEL Policy").

<u>Answer</u>:     The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.

17.     The 1986/1987 UEL Policy provides, among other things, that:

The company will pay on behalf of the **insured** all sums in excess of the **retained limit** which the **insured** shall become legally obligated to pay, or with the consent of the company, agrees to pay, as damages, direct or consequential, because of

    **(a)**     **personal injury,**
    **(b)**     **property damage,** or
    **(c)**     **advertising injury or damage**

with respect to which this policy applies and caused by an **occurrence.**

<u>Answer</u>:     The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.

18.     The 1986/1987 UEL Policy provides, among other things, that:

With respect to **personal injury, property damage,** or **advertising injury or damage** covered under this policy (or which would be covered but for the **insured's** retention as stated in the declarations), but not covered under any **underlying policy** or any other insurance, the company will

(1) defend any suit against the **insured** seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient

* * *

6

and the amounts so incurred, except settlement of claims and suits, are not subject to the **insured's** retention as stated in the declarations and are payable by the company in addition to the applicable limit of liability of this policy.

Answer:        The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.

19.     The 1986/1987 UEL Policy provides, among other things, that:

**"bodily injury"** includes sickness or disease and death resulting at any time therefrom.

Answer:        The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.

20.     The 1986/1987 UEL Policy provides, among other things, that:

"occurrence" means injuries exposure to conditions, which results in **personal injury, property damage** or **advertising injury or damage** neither expected nor intended from the standpoint of the **insured.**

Answer:        The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.

21.     The 1986/1987 UEL Policy provides, among other things, that:

**"personal injury"** means personal injury or **bodily injury** which occurs during the policy period sustained by a natural person, but excluding any such injury included within the definition of **advertising injury or damage.**

7

Answer:      The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.

**B.     The Underlying Lawsuit**

22.    On or about August 6, 2021, Donald Mcllvain, Sr. ("Mr. Mcllvain") and his wife, Carol Mcllvain (collectively, the "Mcllvains"), filed a lawsuit the Circuit Court of Kanawha County, West Virginia against Famous Distribution and various other defendants, which was assigned Case No. 21-C-666 (the "*McIlvain* Lawsuit").

Answer:      The allegations in this paragraph refer to the terms of written pleadings which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.

23.    In the *McIlvain* Lawsuit, the Mcllvains allege, among other things, that Mr. Mcllvain was exposed to asbestos from 1969 to 1998 while working as a maintenance foreman, plumber, pipefitter, and HVAC maintenance mechanic in Ohio and West Virginia, and throughout his lifetime while performing automobile work.

Answer:      The allegations in this paragraph refer to the terms of written pleadings which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.

24.    In the *McIlvain* Lawsuit, the McIlvains further allege that, as a result of his exposure to asbestos, Mr. McIlvain developed lung cancer, which was diagnosed on or about August 20, 2019.

Answer:      The allegations in this paragraph refer to the terms of written pleadings which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.

25.     In the *McIlvain* Lawsuit, the McIlvains also allege that defendants, including Famous Distribution, "are being sued as Asbestos Defendant Product Manufacturers/Suppliers/Installers/Distributors upon the theories of negligence, contaminated buildings, breach of expressed/implied warranty, strict liability, intentional tort, conspiracy, misrepresentations by specific defendants, and post-sale duty to warn. Certain defendants are also being sued as premises owners and as a plaintiff's employers for deliberate intent/intentional tort."

Answer:       The allegations in this paragraph refer to the terms of written pleadings which

speak for themselves and to which no answer is required.  Liberty denies any allegation

inconsistent with the documents.

**C.     Famous Distribution's Tender of the *McIlvain* Lawsuit to Liberty Mutual and Liberty Mutual's Initial Denial.**

26.     On August 27, 2021, just 21 days after the *McIlvain* Lawsuit was filed, Famous Distribution, through its attorneys, tendered the *McIlvain* Lawsuit to Liberty Mutual for defense and indemnity via Liberty Mutual's third party claims administrator, Resolute Management, Inc. ("Resolute").

Answer:       The allegations in this paragraph refer to the terms of a written letter which

speaks for itself and to which no answer is required.  Liberty admits it received an August

27, 2021 letter from Mark R. Koberna and denies any allegation inconsistent with the

documents.

27.     Resolute responded to Famous Distribution's tender by a letter dated September 15, 2021, wherein Resolute indicated "Liberty Mutual has no duty, and therefore declines, to participate in the defense of Famous Distribution in this lawsuit or to indemnify it for any settlement or judgment incurred by it as a result" (the "September 15, 2021 Denial Letter").

Answer:       The allegations in this paragraph refer to the terms of a written letter which

speaks for itself and to which no answer is required.  Liberty admits it sent a September 15,

2021 letter to Mark R. Koberna and denies any allegation inconsistent with the documents.

28.     In its September 15, 2021 Denial Letter, Resolute claimed Liberty Mutual's denial of coverage and refusal to defend or indemnify Famous Distribution against the *Mcllvain* Lawsuit was based on two things: (a) asbestos exclusions contained in the CGL Policies issued from June 30, 1988 through June 30, 1993 and contained in the UEL Policies issued from June 30, 1987 to June 30, 1994; and (b) the fact that "Famous Supply Co.," instead of Famous Distribution, was listed as the named insured in all of the CGL Policies and all of the UEL Policies except the UEL Policy issued from June 30, 1993 to June 30, 1994 (which was subject to an asbestos exclusion).

Answer:     The allegations in this paragraph refer to the terms of a written letter which

speaks for itself and to which no answer is required.  Liberty admits it sent a September 15,

2021 letter to Mark R. Koberna and denies any allegation inconsistent with the documents.

**D.     Liberty Mutual's Final Denial of Coverage for the *Mcllvain* Lawsuit and Unreasonable Delay in Responding to Famous Distribution's Request for Reconsideration.**

29.     On September 22, 2021, counsel for Famous Distribution responded to the September 15, 2021 Denial Letter.

Answer:     The allegations in this paragraph refer to the terms of a written letter which

speaks for itself and to which no answer is required.  Liberty admits it received a September

22, 2021 letter from Mark R. Koberna and denies any allegation inconsistent with the

documents.


30.     In this September 22, 2021 letter, Famous Distribution pointed out that, although Resolute claimed the CGL Policies issued from June 30, 1988 through June 30, 1993, and the UEL Policies issued from June 30, 1987 through June 30, 1994 contain asbestos exclusions, even assuming those assertions were accurate, that would still mean there is coverage under the CGL Policies issued from June 30, 1985 through June 30, 1988, and the UEL Policies issued from June 30, 1985 through June 30, 1987.

Answer:     The allegations in this paragraph refer to the terms of a written letter which

speaks for itself and to which no answer is required.  Liberty admits it received a September

22, 2021 letter from Mark R. Koberna and denies any allegation inconsistent with the

documents.

10

31.     In its September 22, 2021 letter, Famous Distribution further explained that it was clearly intended that the CGL Policies and UEL Policies provide coverage for Famous Distribution.

Answer:        The allegations in this paragraph refer to the terms of a written letter which speaks for itself and to which no answer is required.  Liberty admits it received a September 22, 2021 letter from Mark R. Koberna and denies any allegation inconsistent with the documents.

32.     This is because "Famous Supply Co." was an unregistered trade name — not a separate legal entity of any type, nor even a registered trade name — used by Famous Distribution during the relevant 1985 to 1994 time period (as well as outside that time period).

Answer:        Liberty is without sufficient information to admit or deny the allegations in this paragraph and denies them on that basis.

33.     "Famous Supply Co." is not, nor has it ever been, a registered entity in the State of Ohio.

Answer:        Liberty is without sufficient information to admit or deny the allegations in this paragraph and denies them on that basis.

34.     Likewise, "Famous Supply Co.," is not, nor has it ever been, a registered trade name in the State of Ohio.

Answer:        Liberty is without sufficient information to admit or deny the allegations in this paragraph and denies them on that basis.

35.     In 2012, Famous Distribution registered "Famous Supply" as trade name in Ohio.

Answer:        Liberty is without sufficient information to admit or deny the allegations in this paragraph and denies them on that basis.

36.     "Famous Supply Co." also is not, nor has it ever been, a registered entity in the State of Pennsylvania.

<u>Answer</u>:     Liberty is without sufficient information to admit or deny the allegations in this paragraph and denies them on that basis.

37.     However, in 1925, "Famous Supply Company" was registered in Pennsylvania as a factious entity by an entity unrelated to Famous Distribution.

<u>Answer</u>:     Liberty is without sufficient information to admit or deny the allegations in this paragraph and denies them on that basis.

38.     At some point well prior to the 1985 to 1994 time period relevant to this litigation, an entity owned by Famous Distribution's founder, Hyman Blaushild (either individually or through another entity he owned), acquired the entity that had registered the "Famous Supply Company" trade name in Pennsylvania and began using the shortened "Famous Supply Co." trade name for his businesses.

<u>Answer</u>:     Liberty is without sufficient information to admit or deny the allegations in this paragraph and denies them on that basis.

39.     When Famous Distribution was incorporated in 1970, it began using and operating under the "Famous Supply Company" and/or "Famous Supply Co." trade names.

<u>Answer</u>:     Liberty is without sufficient information to admit or deny the allegations in this paragraph and denies them on that basis.

40.     For whatever reason, the CGL Policies and the UEL Policies were issued in the name of "Famous Supply Co." — again, an entity that does not exist in the State of Ohio and is a fictious entity in the State of Pennsylvania — instead of Famous Distribution.

<u>Answer</u>:     Liberty is without sufficient information to admit or deny the allegations in this paragraph and denies them on that basis.

41.     However, the clear intent of the parties in entering into the CGL Policies and UEL
        Policies was to provide coverage for Famous Distribution.

<u>Answer</u>:        Liberty is without sufficient information to admit or deny the allegations in

this paragraph and denies them on that basis.


42.     Otherwise, Famous Distribution would have been paying Liberty Mutual tens of
        thousands of dollars in annual premiums to provide illusory coverage for an entity
        that did not exist.

<u>Answer</u>:        Liberty is without sufficient information to admit or deny the allegations in

this paragraph and denies them on that basis.


43.     Famous Distribution concluded its September 22, 2021 letter to Resolute by
        requesting that Resolute and Liberty Mutual reconsider their denial of coverage for
        the *McIlvain* Lawsuit.

<u>Answer</u>:        The allegations in this paragraph refer to the terms of a written letter which

speaks for itself and to which no answer is required.  Liberty admits it received a September

22, 2021 letter from Mark R. Koberna and denies any allegation inconsistent with the

documents.


44.     Resolute responded to Famous Distribution's September 22, 2021 letter by a letter dated
        October 13, 2021, wherein Resolute indicated it was "reviewing [Famous Distribution's]
        letter and its related files and will apprise you further once more information is known."

<u>Answer</u>:        The allegations in this paragraph refer to the terms of a written letter which

speaks for itself and to which no answer is required.  Liberty admits it sent an October 13,

2021 letter to Mark R. Koberna and denies any allegation inconsistent with the documents.

45.   When nearly a month passed without any further response from Resolute and Liberty Mutual, Famous Distribution sent a follow-up letter to Resolute on November 10, 2021 wherein it explained:

Since [Resolute's October 13, 2021 letter], we have received no additional communication regarding this matter. As the *[Mcllvain]* Lawsuit continues to progress, it is critical that Famous has a timely understanding of Liberty Mutual's ultimate position regarding coverage. With that in mind, we request that you please provide us with Liberty Mutual's updated coverage position as soon as possible. Otherwise, Famous will be forced to take necessary measures to protect its interests and enforce its rights under the relevant insurance policies including, without limitation, initiating litigation against Liberty Mutual.

Answer:      The allegations in this paragraph refer to the terms of a written letter which speaks for itself and to which no answer is required.  Liberty admits it received a November 10, 2021 letter from Mark R. Koberna and denies any allegation inconsistent with the documents.

46.   Resolute finally provided a substantive response to Famous Distribution's September 22, 2021 request for reconsideration by a letter dated December 9, 2021 — over ten weeks after Famous Distribution sent its request for reconsideration — affirming its denial of coverage for Famous Distribution and refusal to defend or indemnify Famous Distribution in the *Mcllvain* Lawsuit.

Answer:      The allegations in this paragraph refer to the terms of a written letter which speaks for itself and to which no answer is required.  Liberty admits it sent a December 9, 2021 letter to Mark R. Koberna and denies any allegation inconsistent with the documents.

47.   In its December 9, 2021 letter, Resolute explained that Liberty Mutual was unable to locate any underwriting materials for the CGL Policies or UEL Policies and, therefore, "is unable to confirm whether Famous Distribution was an intended insured under the Liberty Mutual policies" and that "[a]s a result, Liberty mutual has no duty, and therefore declines, to participate in the defense of Famous distribution in this lawsuit or to indemnify it for any settlement or judgment incurred by it as a result."

Answer:       The allegations in this paragraph refer to the terms of a written letter which speaks for itself and to which no answer is required.  Liberty admits it sent a December 9, 2021 letter to Mark R. Koberna and denies any allegation inconsistent with the documents.

48.     In essence, Liberty Mutual's position is that because it destroyed its underwriting files for the CGL Policies and UEL Policies, it will hold fast to its bad faith interpretation that the CGL Policies and UEL Policies for which Famous Distribution faithfully paid expensive premiums to Liberty Mutual *every* year, actually only provides coverage for "Famous Supply Co.", an entity that has never existed, despite the fact "Famous Supply Co." is in actuality the trade name used by Famous Distribution.

Answer:       The allegations in this paragraph refer to the terms of a written letter which speaks for itself and to which no answer is required.  Liberty admits it sent a December 9, 2021 letter to Mark R. Koberna and denies any allegation inconsistent with the documents.

## COUNT I
### (Breach of Contract CGL Policies)

49.     Famous Distribution incorporates by reference the foregoing allegations in this Complaint as if fully restated herein.

Answer:       Liberty incorporates its answers to prior paragraphs as if fully set forth herein.

50.     Liberty Mutual issued the CGL Policies to Famous Distribution under its trade name "Famous Supply Co."

Answer:       The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.

51.     The CGL Policies are valid and binding contracts, including offer, acceptance and consideration.

<u>Answer</u>:      The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.

52.   The CGL Policies provide insurance coverage to Famous Distribution, among other benefits.

<u>Answer</u>:      The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.

53.   Famous Distribution has performed all conditions precedent, if any, of the CGL Policies and/or is excused from the same.

<u>Answer</u>:      Denied.

54.   Liberty Mutual has failed and refused to provide coverage and/or other benefits to Famous Distribution under the CGL Policies including, but not limited to, providing Famous Distribution with a defense in the *Mcllvain* lawsuit, constituting a breach of contract.

<u>Answer</u>:      The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.  Liberty denies that it breached any obligation.

55.   As a direct and proximate result of Liberty Mutual's breach of contract, Famous Distribution has suffered damages in an amount to be proved at trial, but in excess of $25,000.

<u>Answer</u>:      Liberty is without sufficient information to admit Plaintiff's damages and denies both the damages as well as liability for the damages.

## COUNT II
### (Breach of Contract — UEL Policies)

56.     Famous Distribution incorporates by reference the foregoing allegations in this
        Complaint as if fully restated herein.

Answer:        Liberty incorporates its answers to prior paragraphs as if fully set forth herein.


57.     Liberty Mutual issued the UEL Policies to Famous Distribution under its trade name
        — "Famous Supply Co."

Answer:        The allegations in this paragraph refer to the terms of written documents

which speak for themselves and to which no answer is required.  Liberty denies any

allegation inconsistent with the documents.


58.     The UEL Policies are valid and binding contracts, including offer, acceptance and
        consideration.

Answer:        The allegations in this paragraph refer to the terms of written documents

which speak for themselves and to which no answer is required.  Liberty denies any

allegation inconsistent with the documents.


59.     The UEL Policies provide insurance coverage to Famous Distribution, among other
        benefits.

Answer:        The allegations in this paragraph refer to the terms of written documents

which speak for themselves and to which no answer is required.  Liberty denies any

allegation inconsistent with the documents.


60.     Famous Distribution has performed all conditions precedent, if any, of the UEL
        Policies and/or is excused from the same.

Answer:        Denied.

61.     Liberty Mutual has failed and refused to provide coverage and/or other benefits to Famous Distribution under the UEL Policies including, but not limited to, providing Famous Distribution with a defense in the *McIlvain* lawsuit, constituting a breach of contract.

<u>Answer</u>:     The allegations in this paragraph refer to the terms of written documents which speak for themselves and to which no answer is required.  Liberty denies any allegation inconsistent with the documents.  Liberty denies that it breached any obligation.

62.     As a direct and proximate result of Liberty Mutual's breach of contract, Famous Distribution has suffered damages in an amount to be proved at trial, but in excess of $25,000.

<u>Answer</u>:     Liberty is without sufficient information to admit Plaintiff's damages and denies both the damages as well as liability for the damages.


## COUNT III
### (Declaratory Judgment — CGL Policies)

63.     Famous Distribution incorporates by reference the foregoing allegations in this Complaint as if fully restated herein.

<u>Answer</u>:     Liberty incorporates its answers to prior paragraphs as if fully set forth herein.


64.     There exists a real and justiciable controversy which is ripe for determination regarding the parties' rights and obligations under the CGL Policies including, without limitation, a dispute as to whether (a) Famous Distribution is entitled to coverage and/or other benefits under the CGL Policies; (b) Liberty Mutual has a duty to defend Famous Distribution in the *McIlvain* Lawsuit under the CGL Policies; and (c) Liberty Mutual has a duty to indemnify Famous Distribution with respect the *McIlvain* Lawsuit under the CGL Policies.

<u>Answer</u>:     The allegations in this paragraph assert legal conclusions to which no answer is required and Liberty denies them on that basis.


65.     Famous Distribution has no adequate remedy at law.

Answer:     The allegations in this paragraph assert legal conclusions to which no answer is required and Liberty denies them on that basis.

66.    Famous Distribution is entitled to a determination of the parties' rights and obligations under the CGL Policies, including, without limitation, a declaration that (a) Famous Distribution is entitled to coverage and/or other benefits under the CGL Policies; (b) Liberty Mutual has a duty to defend Famous Distribution in the *Mcllvain* Lawsuit under the CGL Policies; and (c) Liberty Mutual as a duty to indemnify Famous Distribution with respect to the *Mcllvain* Lawsuit under the CGL Policies.

Answer:     The allegations in this paragraph assert legal conclusions to which no answer is required and Liberty denies them on that basis.

## COUNT IV
**(Declaratory Judgment — UEL Policies)**

67.    Famous Distribution incorporates by reference the foregoing allegations in this Complaint as if fully restated herein.

Answer:     Liberty incorporates its answers to prior paragraphs as if fully set forth herein.

68.    There exists a real and justiciable controversy which is ripe for determination regarding the parties' rights and obligations under the UEL Policies including, without limitation, a dispute as to whether (a) Famous Distribution is entitled to coverage and/or other benefits under the UEL Policies; (b) Liberty Mutual has a duty to defend Famous Distribution in the *Mcllvain* Lawsuit under the UEL Policies; and (c) Liberty Mutual has a duty to indemnify Famous Distribution with respect the *Mcllvain* Lawsuit under the UEL Policies.

Answer:     The allegations in this paragraph assert legal conclusions to which no answer is required and Liberty denies them on that basis.

69.    Famous Distribution has no adequate remedy at law.

Answer:     The allegations in this paragraph assert legal conclusions to which no answer is required and Liberty denies them on that basis.

70.     Famous Distribution is entitled to a determination of the parties' rights and obligations under the UEL Policies, including, without limitation, a declaration that (a) Famous Distribution is entitled to coverage and/or other benefits under the UEL Policies; (b) Liberty Mutual has a duty to defend Famous Distribution in the *Mcllvain* Lawsuit under the UEL Policies; and (c) Liberty Mutual as a duty to indemnify Famous Distribution with respect to the *Mcllvain* Lawsuit under the UEL Policies.

Answer:      The allegations in this paragraph assert legal conclusions to which no answer is required and Liberty denies them on that basis.

## COUNT V
### (Bad Faith Denial of Coverage — CGL Policies)

71.     Famous Distribution incorporates by reference the foregoing allegations in this Complaint as if fully restated herein.

Answer:      Liberty incorporates its answers to prior paragraphs as if fully set forth herein.

72.     Liberty Mutual owes Famous Distribution a duty to act in good faith with respect to Famous Distribution's claim for Liberty Mutual to provide Famous Distribution with a defense and indemnity under the CGL Policies with respect to the *Mcllvain* Lawsuit.

Answer:      The allegations in this paragraph assert legal conclusions to which no answer is required and Liberty denies them on that basis.

73.     Liberty Mutual's denial of coverage and refusal to provide Famous Distribution with a defense and indemnity in the *Mcllvain* Lawsuit in the face of the clear and unambiguous language of the CGL Policies is in bad faith.

Answer:      The allegations in this paragraph assert legal conclusions to which no answer is required and Liberty denies them on that basis.

74.     As a direct and proximate result of Liberty Mutual's bad faith denial of coverage and refusal to provide Famous Distribution with a defense and indemnity in the *Mcllvain* Lawsuit under the CGL Policies, Famous Distribution has suffered damages in an amount to be proved at trial, but well in excess of $25,000, and is also entitled to an award of punitive damages.

Answer:        The allegations in this paragraph assert legal conclusions to which no answer is

required and Liberty denies them on that basis.


## COUNT VI
### (Bad Faith Denial of Coverage — UEL Policies)

75.    Famous Distribution incorporates by reference the foregoing allegations in this
Complaint as if fully restated herein.

Answer:        Liberty incorporates its answers to prior paragraphs as if fully set forth herein.

76.    Liberty Mutual owes Famous Distribution a duty to act in good faith with respect to Famous
Distribution's claim for Liberty Mutual to provide Famous Distribution with a defense and
indemnity under the UEL Policies with respect to the *Mcllvain* Lawsuit.

Answer:        The allegations in this paragraph assert legal conclusions to which no answer is

required and Liberty denies them on that basis.


77.    Liberty Mutual's denial of coverage and refusal to provide Famous Distribution with a
defense and indemnity in the *Mcllvain* Lawsuit in the face of the clear and unambiguous
language of the UEL Policies is in bad faith.

Answer:        The allegations in this paragraph assert legal conclusions to which no answer is

required and Liberty denies them on that basis.


78.    As a direct and proximate result of Liberty Mutual's bad faith denial of coverage and refusal to
provide Famous Distribution with a defense and indemnity in the *Mcllvain* Lawsuit under the
UEL Policies, Famous Distribution has suffered damages in an amount to be proved at trial, but
well in excess of $25,000, and is also entitled to an award of punitive damages.

Answer:        The allegations in this paragraph assert legal conclusions to which no answer is

required and Liberty denies them on that basis.

WHEREFORE, Liberty denies that Plaintiff may receive judgment on any cause of action plead in this complaint, and that Liberty may recover all interest, costs, and fees permitted by law.

Respectfully Submitted,

_s/ David W. Walulik_
David W. Walulik  (Ohio No. 0076079)
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio  45202
(513) 651-6800 (phone)
(513) 651-6981 (facsimile)
dwalulik@fbtlaw.com (e-mail)

*Attorney for Liberty Mutual Insurance Company*

Dated:    May 27, 2022

## <u>AFFIRMATIVE DEFENSES</u>

1.    Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2.    The claims in Plaintiff's Complaint are barred or limited by the terms, conditions, exclusions and other provisions of the Policy.

3.    Plaintiffs' damages, if any, were caused by the acts or omissions of individuals or entities other than Liberty and over which Liberty had no control.

4.    Liberty acted in good faith and in compliance with applicable law, and at all times Liberty's actions were reasonably justified.

5.    Plaintiff's claims are untimely and are time-barred by the Policy.

6.    Plaintiff's claims are barred by the statute of limitations.

7.    The claims in Plaintiff's Complaint are excluded from coverage pursuant to the asbestos exclusions in the CGL and UEL policies.

8.    The CGL Policy and the UEL Policy do not provide coverage where the Policies were issued to Famous Supply Co. and the claims in the McIlvain Lawsuit name Famous Distribution as a defendant.

9.    The CGL Policy and the UEL Policy do not contain coverage for bodily injury, personal injury, and/or property damage which was no caused by an "occurrence" as the term is defined in the Policies and/or "accident" as defined in the Policies.

10.    The CGL Policy and UEL Policy do not contain coverage for bodily injury, personal injury, and/or property damage which did not occur during the policies' periods as required by the Policies.

11.    The CGL Policy and the UEL Policy do not contain coverage for bodily injury, personal injury, and/or property damage which was expected or intended from the standpoint of the insured within the meaning of the Policies.

12.    The CGL Policy and the UEL Policy contain workers' compensation exclusions which may bar coverage.

13.    The CGL Policy and the UEL Policy contain employer liability exclusions which may bar coverage.

14.    In the event the insured failed to notify Liberty of an occurrence, accident, suit and/or claim as required by the CGL Policy and the UEL Policy, or otherwise failed to comply with all the provisions and other prerequisites to coverage thereunder, coverage under the Policies may be precluded.

15.    The CGL Policy and the UEL Policy do not contain coverage for costs and expenses or other obligations assumed by an insured without notice to and the consent of Liberty.

16.    The CGL Policy and the UEL Policy do not contain coverage for losses which were known or should have been known to an insured prior to any policy periods.

17.    The CGL Policy and the UEL Policy do not contain coverage for punitive, exemplary or the like damages to the extent these damages are precluded in the Policies and/or by public policy.

18.    The CGL Policy and the UEL Policy may limit coverage by the "other insurance" condition, any deductible, any per occurrence, per person, or aggregate limits of liability, and any policy provisions precluding the stacking or accumulation of the limits of liability of multiple policies.

19.    Pending discovery, Liberty reserves the right to file any additional defenses that may become apparent during discovery and/or at trial.


WHEREFORE, Liberty denies that Plaintiff may receive judgment on any cause of action plead in this complaint, and that Liberty may recover all interest, costs, and fees permitted by law.


Respectfully Submitted,


*s/ David W. Walulik*
David W. Walulik  (Ohio No. 0076079)
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio  45202
(513) 651-6800 (phone)
(513) 651-6981 (facsimile)
dwalulik@fbtlaw.com (e-mail)

*Attorney for Liberty Mutual Insurance*
Dated:    May 27, 2022            *Company*

24

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on May 27, 2022, a true and correct copy of the foregoing was served upon the following electronically and also by United States Mail:

     Mark R. Koberna
     Sean T. Koran
     SONKIN & KOBERNA, LLC
     3401 Enterprise Parkway, Ste. 400
     Cleveland, OH 44122
     *Counsel for Plaintiff Famous Distribution, Inc.*

*s/ David W. Walulik*
David W. Walulik

0119239.0756902  4894-4189-8783v1